UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 2 2 2008
4-22-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
) No. 07 CR 574-6
vs. ) Judge Ruben Castillo
)
LLOYD LEE )

### PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LLOYD LEE, and his attorney, WILLIAM ZIEGELMUELLER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The superseding indictment in this case charges defendant with mail fraud in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

3.     Defendant has read the charge against him contained in the superseding indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Five of the superseding indictment.  Count Five charges the defendant with mail fraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count Five of the superseding indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning by at least in or about November 1991, and continuing through at least in or about December 2002, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant LLOYD LEE, together with co-defendant Anthony Lee and others,  participated in a scheme and artifice to defraud the Gas Technology Institute and its predecessor company, the Gas Research Institute, and related entities (collectively "GTI") and others, of money and property and of the intangible right to the honest services of its employees, and to obtain money and property from GTI and others by means of materially false and fraudulent pretenses, representations, promises and material omissions.

On or about November 2, 2001, for the purpose of executing the aforementioned scheme and attempting to do so, defendant LLOYD LEE ("LEE") did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing GTI check number 188767 in the amount of $97,000, that envelope being addressed to Molecular Thermoengines, Inc., 4120 Sherburn Ct., Norman, OK, 73072-4403, all in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

Specifically, in or about November 1991, LEE agreed with his brother, Anthony Lee, to have LEE's company, Molecular Thermo Engines ("MTE") enter a research contract with GAS Technology Institute ("GTI") and thereafter provide some of the proceeds of the GTI payments relating to that contract to Anthony Lee's company Reaction Kinetics Consultants ("RKC"). This agreement came about as follows. At the time, Anthony Lee was employed by GTI, and LEE was a professor with an expertise in the natural gas research field. LEE's company had previously contracted to and provided legitimate research work to GTI without the influence and/or involvement of Anthony Lee. However, in or about November 1991, Anthony Lee came to LEE and told him that he (Anthony Lee as an employee of GTI) needed to have certain research done for GTI, and that it would be difficult and time consuming if he were to follow normal procedures for contracting and subcontracting all of the research work that needed to be done since multiple subcontrators would need to be engaged. Anthony Lee proposed that he would make it appear that the entire contract would go to LEE's MTE, but in fact he (Anthony Lee) would retain separate subcontractors to do the work. By this method, Anthony Lee explained, he (Anthony Lee) could avoid time-consuming GTI paperwork – by having only one set of paperwork required – while ensuring that the required work was performed by the numerous subcontractors. LEE agreed to his brother's proposal as a favor to his brother and because he believed his brother's explanation that the subcontracting work would be performed, although he well knew it was being falsely represented to GTI that MTE was doing all of the work on the contract.

3

As they had agreed, MTE contracted with GTI and submitted documentation to GTI to make it appear that MTE was going to and had performed research work for GTI, when in fact it was at that time LEE's belief that this work was in fact going to be performed by others. GTI eventually paid MTE pursuant to this contract, and, as he had agreed with his brother, LEE paid over the majority of the proceeds to Anthony Lee's company, RKC.

Thereafter, his brother Anthony Lee came to LEE on numerous occasions to have LEE act as a contracting party on other GTI contracts, and again LEE agreed to have MTE appear as the contracting party although he knew that this falsely made it appear to GTI that MTE was performing all of the contracting work. LEE through his company MTE entered numerous contracts over several years with GTI and its subsidiary companies. In every instance, LEE paid over the majority of the proceeds of these contracts to Anthony Lee, companies controlled by Anthony Lee, companies controlled by other GTI employees and/or Anthony Lee relatives as directed by Anthony Lee. From time to time during the early to mid 1990's, LEE performed some computer modeling and provided some raw data to Anthony Lee ostensibly to be included in a report to GTI; however, LEE never learned if this work was in fact included in such a report nor was he ever permitted by his brother Anthony Lee to retain moneys from the proceeds of the GTI payments for his producing and supplying this data. Instead, regardless of whether he provided Anthony Lee with data or not, LEE understood that he was still expected to retain, if at all, only a small portion of the GTI check

proceeds and accordingly forwarded the majority of those proceeds to Anthony Lee or others at Anthony Lee's direction.

Between approximately the end of 1991 to and including December 2002, LEE and his brother Anthony Lee operated as follows. In general, Anthony Lee, who lived and worked in the Chicago, Illinois area, would contact LEE (who then lived in Oklahoma) by telephone to tell him that he (Anthony Lee) had prepared a proposal to be submitted by LEE on behalf of MTE to GTI. Anthony Lee would then send the proposal via US Mail or Federal Express to LEE, who signed it and sent it along to GTI with directions that it be forwarded to Anthony Lee. LEE understood that after he received it at GTI, Anthony Lee would forward it to GTI's contracting department. Thereafter, LEE received two copies of an executed GTI contract with indications where he should execute on behalf of MTE. LEE signed one copy of the contract, returned it to GTI, and retained the other (unsigned) copy for his records.

After signing the contract on behalf of MTE, LEE received further instructions from Anthony Lee, which were often in Chinese, and which directed LEE how to divide the proceeds of the check from GTI in payment of the contract. Several of these instructions, or letters, further specified that LEE did not have to perform any work or research. There was no relationship between the amount of the proceeds, if any, that LEE was instructed to retain and the amount of work, if any, performed by LEE or MTE pursuant to their contract with GTI. LEE followed his brother's instructions. After each contract was executed, Anthony

Lee would provide LEE with several bogus MTE invoices that Anthony Lee had created for LEE to submit to GTI.  LEE would sometimes sign his wife's name on the bottom of the invoices and send them to GTI according to the instructions that Anthony Lee provided.

Over time, LEE began receiving invoices from companies owned by other GTI employees, including Salviero Barone and Amirali Rehmat.  On more than one occasion, LEE received an invoice from his brother's RKC company in the same envelope as an invoice from Resource Recovery Consultants.  LEE understood that these invoices were bogus insofar as he was well-aware that these companies had no subcontract with MTE and had, as far as LEE knew, provided no research or other work on the GTI contract.  Further, over time in discussions with Anthony Lee, LEE learned that Barone and Rehmat were other GTI employees.

From time to time, at the direction of his brother Anthony Lee, LEE sent money to Anthony Lee's son, Karl Lee.  Specifically, Anthony Lee told LEE that he (LEE) would be receiving an invoice from Karl Lee's company, Ostler Inc., purportedly for work performed on the GTI contracts, and that after he received the invoice, LEE should issue a check to Ostler Inc. and send that check to Karl Lee.  From time to time, when he received invoices from Karl Lee purportedly relating to MTE's GTI contract, LEE would send Karl Lee checks purporting to be in payments for those invoices.  In reality, as LEE well-knew, Karl Lee and his company Ostler Inc. were never contracted by MTE to do work on the GTI contracts, nor was he aware of them doing any such work for MTE.

Similarly, Anthony Lee instructed LEE that from time to time he (LEE) would receive invoices from his daughter Kathreen Jones on behalf of her company Wayne & Associates (and later Homatex). Anthony Lee instructed LEE to pay these invoices, which purported to be for work provided to MTE on GTI contracts. LEE paid over the monies to Jones and her companies although he well-knew at that time that Kathreen Jones, her husband and their companies Wayne & Associates and Homatex were never subcontracted by MTE to do work on the GTI contracts; nor was LEE aware of them doing any such work for MTE; and further he was aware that Jones and her husband were not qualified to do any such research work. Further LEE had at least one conversation with Kathreen Jones -- in or about 2000 when he delivered a check to her at Anthony Lee's direction – that suggested to LEE that she was concerned that what they were doing was illegal.

As time went on, and in any event by at least in or about 1997, LEE formed the belief that no work, other than the computer modeling work he provided Anthony Lee on four projects, was being performed with respect to the contracts MTE had with GTI. Nevertheless, out of respect for his brother and his traditional culture, LEE continued to assist his brother in his brother's unlawful scheme.

Between in or around November 1995 and December 2002, LEE or MTE received approximately $1.713 million from GTI as a result of his assisting his brother Anthony Lee's scheme. During this time, he paid over the majority of this money to his brother, his

brother's relatives, and other GTI employees to whom his brother directed him to send money. LEE retained approximately $100,000 as a result of this scheme.

In or around November 2002, LEE learned that GTI was conducting an audit of certain of the contracts that MTE had with GTI. Thereafter, Anthony Lee and others engaged in a series of steps designed to conceal their scheme from GTI, and attempted to recruit LEE to do the same. Among other things, Anthony Lee introduced LEE to another GTI employee and co-schemer Amirali Rehmat ("Rehmat") who, in a series of e-mail messages in December 2002, proposed various ways to create false time sheets to make it appear that MTE had actually performed the contracted for work. Ultimately, LEE did not go along with many of Anthony Lee and Rehmat's plans for concealing their scheme, but he did assist them in certain ways such as by requesting an extension to a pending contract and inserting backdated letters into MTE files to mislead GTI auditors.

7.     The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

8

a.    A maximum sentence of 5 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of at least two years but not more than three years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.  The Court also may order restitution to any persons as agreed by the parties.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing.  The following statements regarding the

9

calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

>    b.    **Offense Level Calculations.**

>    i.    The base offense level for the charge in the superseding indictment is 6, pursuant to Guideline §2B1.1(a)(2);

>    ii.    The parties agree that the loss to the victims in this case was $1,713,086, that this loss amount is between $1,000,000 and $2,500,000, and that the defendant's offense level consequently is increased by 16 levels pursuant to Guideline 2B1.1(b)(1)(I).

>    iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

>    iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to

be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, certain components of those calculations – specifically, those set forth above in subparagraphs i, ii, iii, and iv of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.      Defendant understands that with the exception of the Guideline provisions identified in this subparagraph as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P.11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified in this subparagraph as binding) may be corrected by either party prior to sentencing.  The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to

12

cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 , to depart downward from the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence pursuant to the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.    Regarding restitution, it is the government's position that the total amount of restitution owed to the victim in this case is $1,713,086, minus any credit for funds repaid prior to sentencing.  It is the defendant's position that he has already made full restitution to the victim as part of a civil settlement agreement with the victim.  The defendant understands that he must pay restitution to the victim(s), but reserves the right to contest the government's restitution amount.  The parties acknowledge and agree that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

16.    Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

17.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer.   Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3Cl.l, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Acknowledgments and Waivers Regarding Plea of Guilty**

**Nature of Plea Agreement**

19.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 574.

20.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

        a.      **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

                i.      The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be

conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

17

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

      b.    **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed.  Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, or the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim

of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

        c.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charge in the superseding indictment brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the superseding indictment brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the superseding indictment was brought.

22.      By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

23.      Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing

financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25. ·    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.    Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ____4/22/08____


PATRICK J. FITZGERALD
United States Attorney

LLOYD LEE
Defendant


CAROLYN F. MCNIVEN
Assistant U.S. Attorney

WILLIAM ZIEGELMUELLER
Attorney for Defendant


21